# United States Court of Appeals for the Federal Circuit

---

**YUROK TRIBE,**
*Appellant*

v.

**DEPARTMENT OF THE INTERIOR,**
*Appellee*

---

2014-1529

---

Appeal from the Civilian Board of Contract Appeals in No. 3519-ISDA, Administrative Judge Stephen M. Daniels.

---

Decided: May 8, 2015

---

NATHANIEL NESBITT, Hogan Lovells US LLP, Washington, DC, argued for appellant. Also represented by CATHERINE EMILY STETSON, LACY RENEE LOGSDON.

JOSEPH ASHMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., DONALD E. KINNER.

---

Before LOURIE, MOORE, and REYNA, *Circuit Judges.*

MOORE, *Circuit Judge*.

The Yurok Tribe (Tribe) appeals from the Civilian Board of Contracting Appeals' (Board) dismissal for failure to state a claim upon which relief may be granted. J.A. 2–3. Because the Tribe has not been awarded a contract, we *affirm*.

BACKGROUND

In 1975, Congress enacted the Indian Self-Determination and Education Assistance Act (ISDA), 25 U.S.C. §§ 450–450n. The ISDA encourages Indian tribes to manage federally-funded programs by authorizing the government to enter into "self-determination contracts" with tribes under which a tribe agrees to administer a program and the government agrees to fund the program. *Arctic Slope Native Ass'n, Ltd. v. Sebelius*, 583 F.3d 785, 788 (Fed. Cir. 2009). The statute directs the Secretary of the Interior, upon a tribe's request, to enter into a self-determination contract for programs that the Secretary is authorized to administer. 25 U.S.C. § 450f(a)(1). When a tribe wishes to enter into a self-determination contract, also known as a Title I contract, it submits a proposal to the Secretary. *Id.* § 450f(a)(2). The Bureau of Indian Affairs receives and reviews proposals for the Secretary. The statute mandates that "the Secretary shall, within ninety days after receipt of the proposal, approve the proposal and award the contract unless the Secretary provides written notification to the applicant" that the proposal does not meet certain statutory criteria. *Id.* Regulations governing the Bureau state that "[a] proposal that is not declined within 90 days . . . is deemed approved and the Secretary shall award the contract . . . within that 90-day period." 25 C.F.R. § 900.18. In effect, if the Secretary does not timely respond to a Title I proposal, the proposal is deemed approved and the Secretary is directed to award a contract based on the terms of the proposal.

This case presents a request for a contract by the Tribe and a lack of response by the government.  On October 12, 2011, the Tribe wrote a letter to the director of the Bureau's Office of Self Governance stating that it was "submitting this letter of interest for program inclusion and funding under title I of the [ISDA]."  J.A. 18.  The letter set forth a request for approximately $5.5M in annual funding to support the Tribe's Department of Public Safety, a request for $2M to fund facilities and infrastructure for the Department of Public Safety, a request for approximately $1.5M in annual funding to support the Tribe's Tribal Court, and a request for approximately $7.6M to fund facilities and infrastructure for the Tribal Court.  J.A. 18–19.  Attached to the 15-page letter was a Tribal Resolution authorizing the submission of a "Title I Compact Request."  J.A. 33.

On October 17, the Office of Self Governance sent an email to the Tribe stating that it did not "have authority to manage a Title I agreement."  J.A. 36.  The email copied individuals in the Bureau's Office of Justice Services and stated that those individuals would need to be the primary contacts for a self-determination contract.  *Id.*  On October 28, the Office of Justice Services asked the Tribe "to clarify whether the Tribe is seeking a self-determination contract under Title I of the [IDSA] or, inclusion of programs and funding in a self-governance annual funding agreement under Title IV."  J.A. 41.  The Office further stated that if the Tribe was "interested in submitting a proposal to enter into a self-determination contract, then [it should] contact the Office."  J.A. 41.  On November 2, the Tribe wrote an email to the Office of Justice Services, regarding "availability tomorrow to meet . . . regarding our recent Title 1 request."  J.A. 42.  The Tribe then wrote emails requesting to "follow up regarding the Yurok Tribe's Title 1 request" on December 27, 2011, and January 30, 2012.  J.A. 46.

It is undisputed that the Bureau did not decline the proposal in the Tribe's October letter within 90 days of receiving the letter.  On February 1, 2012, the Tribe wrote a letter to the Office of Justice Services, stating that because the Bureau did not respond to the proposal set forth in the Tribe's October letter, "the contract is deemed approved and the Tribe seeks to receive the requisite contract documents."  J.A. 49.  On February 8, the Office of Justice Services wrote a letter to the Tribe stating that the intent of the Tribe's October letter was unclear and did not meet the requirements of a self-determination contract proposal.  J.A. 50–51.  On February 15, the Tribe responded that because the Bureau did not timely decline the proposal, "[t]he Yurok Tribe demands the Secretary award forthwith the formal contract as required by section 900.18 and according to the terms of the Title I funding request."  J.A. 55.

A year later, in March 2013, the Office of Justice Services received a letter from the Tribe titled "Claim for performance of Title I justice services contract pursuant to Contract Disputes Act."  J.A. 65.  The letter referenced the Tribe's October letter, the Secretary's failure to respond to the Tribe's proposal within 90 days, and the deemed approval of the contract.  J.A. 65.  In response, the Office of Justice Services stated that the October letter was not a complete proposal, and that even if it were a proposal, the Secretary would have declined it. J.A. 67–73.

The Tribe then filed the present appeal.  J.A. 79.  It alleged that because the Secretary did not decline the Tribe's October 12 and February 15 letters, contracts with the terms set forth in the letters arose by operation of law and that the Bureau had not performed under these "deemed contract[s]."  *Id.*  Accordingly, the Tribe requested that the Board "[o]rder the Bureau to enter into a Title I contract as proposed by the Tribe in the letters dated October 12, 2011, and February 15, 2012."  J.A. 80.

The Tribe also filed a parallel appeal with the Interior Board of Indian Appeals (IBIA). J.A. 99. The Tribe alleged that the Bureau's inaction resulted in a deemed approval of the Tribe's proposal and a valid and enforceable contract. J.A. 104. After filing its appeal with the IBIA, the Tribe requested a stay of that appeal pending a decision by the Board. J.A. 103. The Tribe argued that the Board was the appropriate forum, but that it wanted to preserve the IBIA appeal in the event that the Board declined jurisdiction. *Id.*

In the IBIA's decision granting the Tribe's request for a stay, the IBIA considered its own jurisdiction. J.A. 105. It noted that to the extent the Tribe seeks to enforce a contract or assert claims based on an awarded contract, the IBIA would not have jurisdiction. J.A. 105. The IBIA noted "that the ISDA regulations appear to distinguish between a proposal being 'deemed approved,' and the Secretary's obligation, in such a case 'to award the contract.'" J.A. 106 (citing 25 C.F.R. § 900.18; *id.* § 900.19 ("Upon approval the Secretary shall award the contract . . . ."); *cf. id.* § 900.13 ("Does the contract proposal become part of the final contract? No, unless the parties agree.")). The IBIA concluded that although the Tribe contended that a deemed contract had arisen by operation of law, the case appeared to present a pre-award dispute, and consequently the IBIA had jurisdiction. J.A. 107. After deciding it had jurisdiction, it granted the Tribe's motion to stay. J.A. 107.

Back in the Board appeal, the government moved to dismiss, arguing that no contract exists between the Tribe and the government. J.A. 93–100. It argued that the Tribe's October letter was not detailed enough to constitute a contract proposal in the general sense and lacked specific details required for Title I proposals by 25 C.F.R. § 900.8. J.A. 96–97. It also argued that even if the proposal in the Tribe's October letter were deemed approved, the Bureau would not be obligated to fund the contract

because the Tribe requested money for programs that the government is not currently providing.  J.A. 97–98.

Finally, the government argued that the Board did not have jurisdiction to hear the Tribe's appeal because it is not a post-award contract dispute.  J.A. 98.  It argued that the "Board has jurisdiction over '[Department of Interior] self-determination contracts' and 'disputes regarding an awarding official's decision relating to a self-determination contract.'"  J.A. 98 (quoting 25 C.F.R. §§ 900.215(a), 900.222 and 25 C.F.R. § 900.151(a)(l)).  It noted that, in contrast, the "IBIA has jurisdiction over 'appealable pre-award decisions.'"  J.A. 98 (quoting 25 C.F.R. §§ 900.150(i), 900.152).  It argued that the IBIA was the proper forum in which to determine whether the Bureau was required to award the contract under § 900.18.  J.A. 99.

The Board granted the government's motion to dismiss.  First, it determined that no proposal was deemed approved because the 90-day deadline was never triggered.  It found that the "Tribe's October 2011 letter is not clear in intent and lacks many of the details plainly required for a contract proposal by 25 U.S.C. § 450f(a)(2) and 25 CFR 900.8."  J.A. 5.  It determined that the Bureau was not required to notify the Tribe of the missing details—despite a regulation that requires the Bureau to notify tribes of missing details within 15 days—because the letter did not make clear that the Tribe was proposing a Title I contract.  J.A. 5; *see* 25 C.F.R. § 900.15(b).  It further determined that even if the Tribe made its intentions clear at an in-person meeting after the Bureau asked for clarification, the October letter did not trigger the 90-day deadline for the Bureau to respond because the Tribe never clarified its intent in writing.  J.A. 5–6.

Second, the Board concluded that even if the Tribe's letter was a Title I proposal, a contract could not have come into existence because the Bureau was not perform-

ing the programs discussed in the October letter.  J.A. 6.
It read the statute and regulations as requiring self-
determination contracts to "transfer from [the Bureau] to
an Indian tribe programs, functions, services, or activities
which the agency had been performing for the tribe, as
well as funds necessary for performance."  J.A. 6.

The Board dismissed the Tribe's claim.  Although it
found that there was no contract, the Board dismissed for
failure to state a claim rather than for lack of jurisdiction
because it has jurisdiction where a plaintiff alleges the
existence of a contract.  J.A. 7 (citing *Engage Learning,
Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011)).  It
did not, however, directly address the government's
alternative argument that this is a pre-award dispute
that should be reviewed by the IBIA.

The Tribe appeals.  We have jurisdiction pursuant to
41 U.S.C. § 7107(a)(1)(A) and 28 U.S.C. § 1295(a)(10).

## DISCUSSION

We review a dismissal for failure to state a claim de
novo.  *Dehne v. United States*, 970 F.2d 890, 892 (Fed. Cir.
1992).

### I.     The Tribe's October Letter

The Board determined that the Tribe's October letter
was not a Title I proposal because it "is not clear in in-
tent."  J.A. 5.  We do not agree.  The 15-page letter was
entitled "Yurok Tribe Title I Request for the Yurok De-
partment of Public Safety and the Yurok Tribal Court."
J.A. 18.  The letter stated that the Tribe was submitting
"this letter of interest for program inclusion and funding
under Title I of the [ISDA]."  J.A. 18.  The letter detailed
the particular request and why funds were needed.  It was
accompanied by a tribal resolution as required by statute.
And the Tribe sent a follow-up email to the Bureau,
entitled "Yurok Tribe – Title 1 Request and Council Tribal
Resolution."  J.A. 35.

None of the alleged deficiencies identified by the government demonstrate that the letter was not a Title I proposal. The government argues that the proposal was unclear because the Tribe sent it to the wrong office within the Bureau. The government does not explain which portion of the statute requires a tribe to send a Title I proposal to a particular office. And, in any event, the Bureau itself forwarded the October letter to the correct office, which then communicated directly with the Tribe regarding the proposal. J.A. 36. The government argues that the letter was not a Title I proposal because it used words that have legal significance in other types of contracts between tribes and the government. Even though the phrases "letter of interest," "compact," and "Annual Funding Agreement" may have legal significance for other types of tribal contracts, usage of these terms does not make the letter ambiguous when it identifies itself as a Title I proposal. The government argues the letter was not a Title I proposal because it did not include all of the details required for a proposal under § 900.8. The regulations speak precisely to this argument. The regulations require the Bureau to notify a tribe of missing details within 15 days. *See* 25 C.F.R. § 900.15(b). The Bureau did not do so here. Nothing the government complains of renders the letter ambiguous. Thus, deficiencies in an otherwise unambiguous request for a self-determination contract cannot excuse the government's failure to act within the prescribed period.

The Tribe's October letter constituted a Title I proposal. As such, it triggered the 90-day deadline under the ISDA. Thus, we cannot affirm the Board's dismissal on the first ground it found.

## II.    Programs Includable in Title I Contracts

The Board determined that even if the October letter constituted a Title I proposal no contract could have arisen from it. J.A. 6. The Board held that a self-

determination contract can only cover programs that the Bureau is already providing. J.A. 6. It then determined that no contract could have been formed for the programs discussed in the Tribe's October letter because the government is not currently administering those programs for the Tribe. J.A. 6. We do not agree.

Self-determination contracts are not limited to programs the government is currently providing. Section 450f(a)(1) lists five categories of programs that can be included in a self-determination contract. Section 450f(a)(1)(B) permits self-determination contracts to be awarded for any programs "the Secretary *is authorized to administer* for the benefit of Indians under the Act of November 2, 1921." (emphasis added). The language "is authorized to administer" plainly includes any program the Secretary of the Interior or the Secretary of Health and Human Services could authorize under the Act of November 2, 1921. *See* 25 U.S.C. § 450b(i). There is no exclusion for programs that either Secretary "is authorized to administer" under the Act of November 2, 1921, but is not currently providing. Other language from § 450f further supports this plain meaning. Section 450f(a)(1)(C) permits self-determination contracts to be awarded for all programs "*provided by* the Secretary of Health and Human Services under the Act of August 5, 1954." (emphasis added). The statute's language reflects Congress's deliberate choice. In the first instance, with regard to the Act of November 2, 1921, it used the broad "authorized to administer," whereas with regard to the second Act, it used the more narrow "provided by." We assume that Congress uses language carefully and purposefully. We thus must give weight to the distinction drawn by Congress in § 450f and will not read a limitation into § 450f(a)(1)(B) that self-determination contracts are limited to programs the government is currently providing.

Relying on the Ninth Circuit's decision in *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025 (9th Cir. 2013), the government argues that a self-determination contract cannot be awarded in this case. *Los Coyotes*, however, is factually distinct. There, the Ninth Circuit considered whether the Secretary *properly declined* a contract on the basis that the Bureau was not providing the programs for which the tribe was requesting funding. *Id.* at 1028. *Los Coyotes* does not absolve the government's inaction because it *could have declined* the proposal.

Despite the clear authorization language of § 450f, the government claims that § 450b(j) prevents issuance of a self-determination contract in this case. Section 450b(j) defines "self-determination contract" as a contract "between a tribal organization and the appropriate Secretary for the planning, conduct and administration of programs or services which are otherwise provided to Indian tribes and their members pursuant to Federal law." The government argues that the definition's use of "otherwise provided" means that self-determination contracts are limited to programs the Bureau is already providing to the particular tribe in question. The provision, however, only indicates that a contract can encompass programs that the government provides to tribes. The Tribe requested funding for law enforcement and court programs. The government provides these programs to other tribes. Oral Argument at 18:16–18:23, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2014-1529.mp3. It appears that the government has awarded self-determination contracts that encompass these types of programs. And the government provides some funding for the Yurok Tribe's law enforcement programs already pursuant to another contract with the Tribe. Section 450b(j) does not prohibit the government from entering into an agreement with this Tribe for the requested funding.

The government also asserts that §§ 450j-1(a)(1) and 450f(a)(2)(D) limit self-determination contracts to programs that the government is currently providing. Section 450j-1(a)(1) states that "[t]he amount of funds provided under the terms of self-determination contracts entered into pursuant to this subchapter shall not be less than the appropriate Secretary would have otherwise provided for the operation of the programs or portions thereof for the period covered by the contract." The government argues that because it is not providing the programs requested by the Tribe, the current funding level is zero and the government need not contract for any funding. Section 450j-1(a)(1), by its clear terms, sets a floor, not a ceiling, on the amount of money that a Tribe can receive in a self-determination contract. Section 450j-1(a)(1) does not prohibit the government from including funding for the requested programs in a self-determination contract. Section 450f(a)(2)(D) authorizes the Bureau to decline a contract proposal where "the amount of funds proposed under the contract is in excess of the applicable funding level for the contract, as determined under section 450j-1(a)." The government argues that allowing the Tribe to receive funding in excess of the current funding level would render this section meaningless because it would prohibit the Secretary from declining proposals. This, however, is not a case where the Secretary declined the proposal under § 450f(a)(2)(D). The government's discretion to decline a proposal is irrelevant to what programs can be included in a contract where the government fails to act. Neither section § 450j-1(a)(1) nor § 450f(a)(2)(D) support the government's claim that self-determination contracts are limited to funding for programs the government currently provides to the requesting tribe.

The statutory language is clear: "The Secretary is directed, upon the request of any Indian tribe by tribal resolution, to enter into a self-determination contract . . .

to plan, conduct, and administer programs . . . which the Secretary is authorized to administer" and "shall, within ninety days after receipt of the proposal, approve the proposal and award the contract unless the Secretary provides written notification to the applicant" declining the proposal. 25 U.S.C. § 450f(a). Because the government failed to respond to the Tribe's proposal and the proposal covers programs that the Secretary is authorized to administer, the statute directs the Secretary to enter into a contract. We thus cannot affirm the Board's dismissal on the second ground it found.

### III.    Other Grounds to Affirm

Although we cannot affirm the Board's dismissal on *either* of the grounds it found, a dismissal for failure to state a claim can be affirmed on any ground supported by the record. *See AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1328 (Fed. Cir. 2007). Accordingly, we affirm because this case presents a pre-award dispute that the Board cannot review.

Under the ISDA, there are two steps to creating a contract: approval and award. 25 U.S.C. § 450f(a)(2) ("[T]he Secretary shall, within ninety days after receipt of the proposal, approve the proposal and award the contract . . . ."). The regulations also recognize this distinction. 25 C.F.R. § 900.18 ("A proposal that is not declined within 90 days . . . is deemed approved and the Secretary shall award the contract . . . ."). It is undisputed that the Secretary did not decline the Tribe's proposal within 90 days of either the October or February letters, but it also did not award a contract. As the government argued below and in its supplemental briefing to us, this case presents a pre-award dispute. Because the Secretary has not yet awarded the Tribe a contract, the Board properly dismissed this case for failure to state a claim. *Engage Learning*, 660 F.3d at 1353.

The Tribe strains to argue that a contract has been awarded. The Tribe argues that a deemed approved Title I proposal "results in the award of a self-determination contract." Appellant's Supp. Br. at 1. It argues that approval and award are one in the same because the statute and regulations state that both must occur within 90 days. *Id.* at 2–3 (citing 25 U.S.C. § 450f(a)(2); 25 C.F.R. § 900.18).

Even if the proposal was deemed approved after the Secretary failed to meet the 90-day deadline, however, the Secretary must still award a contract. That has not happened here, as demonstrated by the Tribe's requests in this case. The Tribe prayed that the Board "[o]rder the Bureau to enter into a Title I contract," J.A. 80, and asks us to remand the matter "for a determination of the terms of the deemed contract," Appellant's Br. at 37. These are requests for pre-award actions.

In support of its argument that a contract arises as a matter of law, the Tribe points to two statements made by the Bureau. First, it identifies a letter from the Bureau in an unrelated case. In that letter, the Bureau stated that because a proposal was not declined within 90 days, the contract was deemed approved and it was not necessary for the contract to be signed to be effective. Appellant's Supp. Br. at 3 (citing *Del. Tribe of Indians v. Bureau of Indian Affairs*, IBIA 02-65-A, at 10 (July 26, 2002), available at http://www.oha.doi.gov/IBIA/IbiaDecisions/isda/20020726-0265a.PDF)). From this statement, the Tribe argues that a deemed approved contract is awarded by operation of law. In context, however, the Bureau's statement in that case distinguishes between approval and award:

> The Tribe submitted a proposed [Consolidated Tribal Government Program] contract on or about June 1, 2000. As you know, the contract was not declined within 90 days. Accordingly, the contract

> is deemed approved by operation of law. 25 U.S.C. § 450f(a)(2) and 25 C.F.R. § 900.18. On November 29, 2000, *the Contracting Officer sent an award letter* on your contract and shortly thereafter the full amount of funds requested under the contract were disbursed to the Tribe (with the exception of contract support funds which you have been assured will be disbursed to the Tribe when available). Under these circumstances, it is not necessary for your contract to be signed to be effective.

*Del. Tribe*, IBIA 02-65-A, at 10 (emphasis added). It was not the approval that resulted in the contract being effective, it was the award and payment. Here, there was no award or payment to the Tribe. Second, the Tribe points to a handbook published by the Departments of the Interior and Health and Human Services that states that the "failure of agency personnel to act within the 90-day period . . . results in the award of a contract." Appellant's Supp. Br. at 4 (citing DOI/HHS INTERNAL HANDBOOK, at 39). Even if such a statement were binding on the government, the handbook does not state that a contract arises by operation of law or that a contract is awarded automatically. Rather, the statement emphasizes the importance of responding to proposals within 90 days because if a proposal is not declined, the Secretary will be required to award a contract. The use of the term "results" also indicates that the award occurs after, not concurrently with, the approval. Neither of these statements support the Tribe's assertion that a deemed approved contract is awarded by operation of law.

Even though the Board lacks authority to review this case as it is still a pre-award case, the Tribe is not without recourse. The Tribe's case before the IBIA is pending and the Tribe acknowledges that the IBIA "retains jurisdiction over 'pre-award decisions.'" Appellant's Supp. Br. at 2.

CONCLUSION

The dismissal of the Tribe's complaint for failure to state a claim upon which relief may be granted is

**AFFIRMED**

COSTS

No costs.