# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 13, 2021                    Decided August 24, 2021

No. 19-5005

COOK INLET TRIBAL COUNCIL, INC.,
APPELLEE

v.

EVANGELYN DOTOMAIN, DIRECTOR, ALASKA AREA OFFICE,
U.S. INDIAN HEALTH SERVICE, ET AL.,
APPELLANTS

———

Consolidated with 20-5192

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:14-cv-01835)

———

*John S. Koppel*, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs were *Jeffrey Bossert Clark*, Acting Assistant Attorney General at the time the brief was filed, and *Daniel Tenny*, Attorney. *Derek S. Hammond* and *R. Craig Lawrence*, Assistant U.S. Attorneys, entered appearances.

*Rebecca A. Patterson* argued the cause for appellee. With her on the brief were *Lloyd B. Miller* and *Whitney A. Leonard.*

Before: HENDERSON, KATSAS and WALKER, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: Cook Inlet Tribal Council runs an alcohol recovery program under a self-determination contract with Indian Health Service. The Council says its increased facility costs qualify as contract support costs pursuant to 25 U.S.C. § 5325(a).

We disagree.

I

Cook Inlet Tribal Council represents eight federally recognized tribes in Alaska. In 1992, it opened an alcohol recovery center in Anchorage. The program started with a residential treatment center but expanded over the years to include several outpatient facilities.

The Council runs its recovery program through a contract with Indian Health Service under the Indian Self-Determination and Education Assistance Act. 25 U.S.C. § 5321. The Act authorizes tribes to provide health services otherwise run by the government. In exchange, the government pays for the program. *See Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 252 (2016) ("tribes may enter into 'self-determination contracts' with federal agencies to take control of a variety of federally funded programs").

The Act requires the government to reimburse contracting tribes for two categories of health care expenses. First, Indian Health Service must pay the secretarial amount — a negotiated sum that can't be less than what Indian Health Service would have spent on the program if it directly provided the health care. 25 U.S.C. § 5325(a)(1); *see Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 186 (2012); *see also Menominee Indian Tribe of Wisconsin*, 577 U.S. at 252 ("A contracting tribe is eligible to receive the amount of money that the government would have otherwise spent on the program . . . .").

Second, Indian Health Service must pay for contract support costs. Pub. L. No. 100-472, § 205, 102 Stat. 2285, 2292-94 (1988) (codified at 25 U.S.C. § 5325). These funds reimburse tribes for contract compliance expenses Indian Health Service doesn't incur (and therefore doesn't pay) when it runs the program. In general, contract support costs cover expenses not contemplated by the secretarial amount, like workers' compensation premiums and some overhead expenses. 25 U.S.C. § 5325(a)(2)–(3); *Cherokee Nation of Oklahoma v. Leavitt*, 543 U.S. 631, 635 (2005). With the secretarial amount and the added contract support costs, the government is required to fully fund the contracted-for health program run by a tribe.

In 1992, Indian Health Service agreed to pay the Council $150,000 to run the alcohol recovery program. Of that total, $11,838.50 paid for facility costs. The Council and the government agreed that those facility costs — which included rent and a partial salary for a facilities coordinator — were expenses Indian Health Service would have incurred if it ran the recovery center. So Indian Health Service paid the facility costs from the secretarial amount.

The record does not show how much the Council received for facility costs in 2014. It does, however, show an approximately thirteen-fold increase in total funding since 1992. In 2014, the Council received approximately $2,000,000 from Indian Health Service.

In 2014, the Council proposed amending the contract to add more than $400,000 in annual facility costs. The Council insisted these funds be paid as *contract support costs* to supplement any secretarial funds already going towards facility costs. For reasons unexplained to this court, the Council did not request an increase in the annual secretarial amount to cover the unfunded facility costs.

The Council sued Indian Health Service after it denied the Council's proposal, and the district court awarded judgment to the Council.

The district court began by finding ambiguity in the statutory provision defining contract support costs. *Cook Inlet Tribal Council v. Mandregan*, 348 F. Supp. 3d 1, 9-12 (D.D.C. 2018) (citing 25 U.S.C. § 5325(a)(2)). It then applied the Indian Canon to construe that purported ambiguity in favor of the Council, holding that its facility costs could be contract support costs. 348 F. Supp. 3d at 12. It later ordered Indian Health Service to pay $302,000 to the Council. *Cook Inlet Tribal Council v. Mandregan*, No. 1:14-cv-1835 (D.D.C. Apr. 29, 2020) (order).

The government appeals. We have jurisdiction, 28 U.S.C. § 1291, and our review is de novo. *Stoe v. Barr*, 960 F.3d 627, 629 (D.C. Cir. 2020).

5

II

The Indian Self-Determination and Education Assistance Act does not require the government to pay contract support costs for expenses Indian Health Service normally pays when it runs a health program. Those expenses are eligible for reimbursement only under the secretarial amount. Because the facility costs here are expenses normally incurred by the agency, we reverse the district court.

A

As in all cases of statutory interpretation, we start with the controlling statute's text. *Van Buren v. United States*, 141 S. Ct. 1648, 1654 (2021). That brings us to 25 U.S.C. § 5325(a)(2), which defines contract support costs. It states, in part:

> There shall be added to [the secretarial amount] **contract support costs** which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management, but which —
>
> > (A) **normally are not carried on by the respective Secretary in his direct operation of the program**. . . .

25 U.S.C. § 5325(a)(2)(A) (emphases added).[1]

---

[1] The parties don't discuss § 5325(a)(2)(B). *See id.* (adding costs for activities which "are provided by the Secretary in support of the contracted program from resources other than those under contract").

Put more succinctly, the government must pay contract support costs for the "activities" required by the contracted-for program — but only if those activities "normally are not carried on by" the government agency that would otherwise operate the program. That's because normal expenses are *already* reimbursed under the secretarial amount. *Id*. § 5325(a)(1).

The "activities" in this case concern the provision of facilities. In 1992, that included rent and part of the salary of a facilities coordinator. If the agency *normally* incurs these costs when it runs a program, those costs are not contract support costs.

Here, it is self-evident that the agency normally pays for space and staff when it runs a health care center, especially one with in-patient services. Whether or not a health center is government-run, patients need a place to be treated. And they need medical and support staff to treat them and maintain the space. The staff, in turn, needs a place to work. And at the risk of belaboring the obvious, all of the above — staff, workspace, and patient rooms — costs money whether or not the program is government-run.

Perhaps some exceptions or nuances may arise in other cases, but those are not at issue here. The Council itself considered the facility costs within the secretarial amount when it first entered into its contract with the government in 1992.[2]

---

[2] The Council says that some categories of expenses will cost more for a tribe to provide than the government, and that contract support costs are intended to cover this difference. *See* Appellee's Br. 44 n.17; Oral Arg. Tr. 18-19. But that's not this case. The Council has directed us to no evidence that any of the facility costs here — in particular, rent and salaries — would cost more for the Council to

B

On appeal, the Council attempts to escape the limits of § 5325(a)(2) by relying on § 5325(a)(3). But § (a)(3) does not expand the types of contract support costs made available to tribes by § (a)(2). Instead, § (a)(3) merely divides into two the contract support costs already defined by § (a)(2).[3]

---

provide. We thus need not consider whether cost differentials of the sort flagged by the Council may be addressed as contract support costs under § 5325(a)(2) or in negotiations over the secretarial amount under § 5325(a)(1).

[3] Sections 5325(a)(1), (a)(2), and (a)(3)(A) provide:

> (1) The amount of funds provided under the terms of self-determination contracts entered into pursuant to this chapter shall not be less than the appropriate Secretary would have otherwise provided for the operation of the programs or portions thereof for the period covered by the contract, without regard to any organizational level within the Department of the Interior or the Department of Health and Human Services, as appropriate, at which the program, function, service, or activity or portion thereof, including supportive administrative functions that are otherwise contractable, is operated.

> (2) There shall be added to the amount required by paragraph (1) contract support costs which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management, but which —

Specifically, § (a)(3) divides contract support costs into "direct program expenses," 25 U.S.C. § 5325(a)(3)(A)(i), and "any additional administrative or other expense incurred" in operating the program, *id.* § 5325(a)(3)(A)(ii). Direct expenses include contract support costs like "workers' compensation and unemployment taxes." *Swinomish Indian Tribal Community v. Becerra*, 993 F.3d 917, 918 (D.C. Cir. 2021). Indirect expenses include contract support costs like "audits and computer

---

(A) normally are not carried on by the respective Secretary in his direct operation of the program; or

(B) are provided by the Secretary in support of the contracted program from resources other than those under contract.

(3)(A) The contract support costs that are eligible costs for the purposes of receiving funding under this chapter shall include the costs of reimbursing each tribal contractor for reasonable and allowable costs of —

(i) direct program expenses for the operation of the Federal program that is the subject of the contract; and

(ii) any additional administrative or other expense incurred by the governing body of the Indian Tribe or Tribal organization and any overhead expense incurred by the tribal contractor in connection with the operation of the Federal program, function, service, or activity pursuant to the contract,

except that such funding shall not duplicate any funding provided under subsection (a)(1) of this section.

systems." *Id.*; *see also Cherokee Nation of Oklahoma v. Leavitt,* 543 U.S. 631, 635 (2005) (indirect expenses may include "special auditing or other financial management costs").

But nothing about § (a)(3) changes the limits on contract support costs provided by § (a)(2). An expense can be neither a direct contract support cost nor an indirect contract support cost if it is not, as defined by § (a)(2), a contract support cost. And under § (a)(2), no expense is a contract support cost if it — like facility costs — is "normally" paid by the agency that would otherwise administer the program directly. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must . . . interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole.") (cleaned up). Moreover, the word "allowable" in § (a)(3) reinforces this point. 25 U.S.C. § 5325(a)(3)(A). By its terms, § (a)(3) includes "reasonable and allowable costs of" direct program expenses and additional administrative or overhead expenses. *Id.* If "allowable" simply meant allowable under § (a)(3), the word would do nothing. So "allowable" must mean allowable under some other law besides § (a)(3). It thus means allowable under § (a)(2), which is the nearest reasonable referent.

The Council says this reading renders superfluous the non-duplication provision in § (a)(3), which says contract support costs "shall not duplicate any funding provided under subsection (a)(1) of this section [i.e., the secretarial amount]." *Id.* § 5325(a)(3)(A). But it's far more faithful to the statutory scheme to view § (a)(3)'s non-duplication provision as reinforcing the rest of the statute in a belt-and-suspenders manner, rather than writing § (a)(2)'s "normally" provision completely out of the statute — as the Council's approach

requires — and replacing the "normally" provision with an understanding that allows its exact opposite.

The Council fears today's result will allow the government to underfund tribal health programs. But when a tribe contracts to run a program that an agency would otherwise provide, the agency remains bound to pay (1) what it would have paid, and (2) contract support costs for necessary expenses the agency would not "normally" incur. *Id.* § 5325(a)(2)(A). If a tribe's secretarial amount does not cover the same facility costs "normally" incurred by the agency, the tribe's recourse is simple: Sue for a larger secretarial amount.

\* \* \*

The district court held that the Council's facility costs are contract support costs. Because they are not, we reverse the district court's order granting summary judgment to the Council, vacate the court's judgment awarding the Council $302,000, and remand for entry of judgment to Indian Health Service.