# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 18, 2022      Decided January 13, 2023

No. 22-5100

NAVAJO NATION,
APPELLANT

v.

UNITED STATES DEPARTMENT OF THE INTERIOR AND DEBRA
A. HAALAND, IN HER OFFICIAL CAPACITY AS SECRETARY,
UNITED STATES DEPARTMENT OF THE INTERIOR,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00011)

———

*Steven D. Gordon* argued the cause for appellant. With
him on the briefs was *Philip Baker-Shenk*.

*John S. Koppel*, Attorney, U.S. Department of Justice,
argued the cause for appellees. With him on the brief were
*Brian M. Boynton*, Principal Deputy Assistant Attorney
General, and *Mark B. Stern*, Attorney.

Before: HENDERSON and WALKER, *Circuit Judges*, and
SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Department of the Interior (DOI) provides annual funding for the judicial system of Navajo Nation, an Indian tribe, through a series of self-determination contracts authorized by the Indian Self-Determination and Education Assistance Act (ISDEAA), 25 U.S.C. § 5301 *et seq.* After its 2014 annual funding request was "deemed approved," *see Navajo Nation v. U.S. Dep't of the Interior* (*Navajo Nation I*), 852 F.3d 1124, 1130 (D.C. Cir. 2017), Navajo Nation filed six separate lawsuits in the U.S. District Court for the District of Columbia to enforce similar funding requests that it had submitted each year from 2015 through 2020. In evaluating the parties' cross-motions for summary judgment, the district court granted summary judgment to Navajo Nation as to the 2015 and 2016 proposals but granted summary judgment to the DOI as to the rest.

Navajo Nation appeals the adverse judgment and contends that both the ISDEAA and its regulations prohibit the DOI from declining its funding requests for 2017 through 2020. We disagree with respect to the ISDEAA but agree with respect to the regulations. Accordingly, we reverse the district court's grant of summary judgment to the DOI and remand as set forth below.

**I.**

**A.**

"Congress enacted the [ISDEAA] to help Indian tribes assume responsibility for programs or services that a federal agency would otherwise provide to the tribes' members." *Navajo Nation I*, 852 F.3d at 1126. The DOI Secretary must, upon a tribe's request, enter a self-determination contract under which the tribe assumes control over federally funded

programs formerly administered by the federal government. *See* 25 U.S.C. § 5321(a)(1); *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 252 (2016). To form such a contract, a tribe must propose terms to the Secretary and the Secretary must "approve the proposal" within ninety days unless he "clearly demonstrates"—or supports with "controlling legal authority"—that at least one of five criteria is met. 25 U.S.C. § 5321(a)(2). One ground for declination is if the tribe has requested funds "in excess of the applicable funding level for the contract." *Id.* § 5321(a)(2)(D). Once entered, a self-determination contract may be for a definite or an indefinite term. *See id.* § 5324(c)(1). Upon the expiration of a definite term self-determination contract, the tribe may submit a proposed renewal contract to the DOI for approval. *See id.* § 5321(a)(2). If the renewal contract proposes "no material or substantial change to the scope or funding" of the programs covered by the previous contract, the DOI must approve the proposal and "will not review" it for the declination criteria listed in section 5321(a)(2). 25 C.F.R. § 900.33.

The self-determination contract itself does not specify applicable funding levels. Rather, funding is determined each year through "annual funding agreements" (AFAs), which "represent[] the negotiated agreement of the Secretary to fund, on an annual basis, the programs, services, activities and functions transferred to an Indian tribe . . . under the [ISDEAA]." 25 C.F.R. § 900.6; *see also* 25 U.S.C. §§ 5368(c)(1), 5363(b)(1). Each AFA is incorporated into the self-determination contract then in effect. *See* 25 U.S.C. § 5329(c) (model self-determination contract subsec. 1(f)(2)(B)); *Menominee Indian Tribe*, 614 F.3d at 522 (AFAs "become part of the contract"). The process for negotiating an AFA looks much like the process for entering a self-determination contract: it begins with a tribe's proposal to the

DOI, *see* 25 U.S.C. § 5321(a)(2), which the DOI may ordinarily decline pursuant to the five section 5321(a)(2) criteria only. *See also* 25 C.F.R. § 900.22 (repeating section 5321(a)(2)'s declination criteria). But when a proposed AFA is "successor" to and "substantially the same as" an earlier AFA, the DOI's declination authority disappears; faced with such a proposal, the DOI "shall approve and add to the contract the full amount of funds to which the contractor is entitled," without evaluating the section 5321(a)(2) declination criteria. 25 C.F.R. § 900.32.

Each AFA supplies program funding based on the sum of "direct program expenses" and "contract support costs." *See* 25 U.S.C. § 5325(a)(3)(A). Funding for direct program expenses, "which courts have also called the 'secretarial amount,'" *Fort McDermitt Paiute & Shoshone Tribe v. Becerra*, 6 F.4th 6, 7 (D.C. Cir. 2021), may not be less than what the Secretary "would have otherwise provided" if the federal government still administered the programs covered by the contract, 25 U.S.C. § 5325(a)(1). By contrast, contract support costs reimburse the tribe for expenses "not contemplated by the secretarial amount," like "contract compliance expenses" that are borne by the tribe but that the federal government would not incur if it still ran the programs. *See Cook Inlet Tribal Council, Inc. v. Dotomain*, 10 F.4th 892, 893 (D.C. Cir. 2021). Critical for our purposes, the ISDEAA "sets a floor, not a ceiling, on the amount of money that a Tribe can receive in a self-determination contract." *Navajo Nation I*, 852 F.3d at 1130 (quoting *Yurok Tribe v. U.S. Dep't of the Interior*, 785 F.3d 1405, 1412 (Fed. Cir. 2015)). From there, the tribe may negotiate funding increases with the DOI each year and any such increase is memorialized in that year's AFA. *See* 25 U.S.C. §§ 5324(c)(2), 5325(a)(3)(C).

When the DOI declines a tribe's funding request or proposed self-determination contract, the tribe may challenge that declination in federal court. *See id.* § 5331(a).

**B.**

This dispute spans two self-determination contracts and six AFAs between Navajo Nation and the DOI. In 2012, Navajo Nation and the DOI, acting through the Bureau of Indian Affairs (BIA), entered a five-year self-determination contract under which the DOI agreed to fund Navajo Nation's judicial system. *See Navajo Nation I*, 852 F.3d at 1126. Then, in its 2014 AFA proposal, Navajo Nation requested a significantly higher reimbursement for direct program expenses—about $17 million, up from $1.3 million in 2013. *Id.* at 1127. When the Secretary untimely declined the proposal in part, Navajo Nation sued to enforce it in federal court. On appeal, we upheld the proposed amount, concluding that the Secretary's failure to timely decline it meant the proposal was "deemed approved." *Id.* at 1130; *see also* 25 U.S.C. § 5321(a)(2); 25 C.F.R. § 900.18. On remand, the district court awarded Navajo Nation damages representing the difference between the amount the DOI had awarded and the amount the Nation had proposed. *See Navajo Nation v. U.S. Dep't of the Interior* (*Navajo Nation I*), No. 14-cv-1909, 2020 WL 13158302, at *4 (D.D.C. June 12, 2020).

Each year from 2015 through 2020, Navajo Nation requested a level of funding for direct program expenses that was substantially the same as the amount that was "deemed approved" in 2014. The DOI declined all six AFA proposals in large part, claiming that each requested funding "in excess of the applicable funding level for the contract." 25 U.S.C. § 5321(a)(2)(D); 25 C.F.R. § 900.22(d). Instead, the DOI awarded lesser amounts close to what the Tribe had received in

2012 and 2013. Also during this period, the parties' 2012 self-determination contract expired. So, with its 2017 proposed AFA, Navajo Nation submitted a proposed renewal contract covering the years 2017 through 2021, the terms of which incorporated the 2017 proposed AFA and otherwise mirrored those of the previous self-determination contract.

While *Navajo Nation I* was pending, Navajo Nation filed six additional lawsuits challenging the DOI's declination of its annual funding requests in each of the six years, 2015 through 2020. The district court consolidated and stayed the suits pending a final resolution of *Navajo Nation I*. After the district court resolved *Navajo Nation I* on remand, the parties cross-moved for summary judgment in the consolidated cases and the court granted each motion in part. The court granted Navajo Nation's motion for summary judgment with respect to the funding proposals in 2015 and 2016, finding that they were "successor[s]" to and "substantially the same" as the 2014 AFA, which had been "deemed approved" by the DOI. *See* 25 C.F.R. §§ 900.18, 900.32. But the court granted the DOI's cross-motion for summary judgment with respect to the funding proposals for 2017 through 2020, concluding that those proposals were neither "successor[s]" to the 2014 AFA, *id.* § 900.32, nor "renewal contracts" within the meaning of 25 C.F.R. § 900.33. Under that reasoning, the DOI could permissibly consider the declination criteria and decline the proposals on the ground that they all sought funding "in excess of the applicable funding level for the contract," 25 U.S.C. § 5321(a)(2)(D); 25 C.F.R. § 900.22(d), which, in the district court's view, was no more than the amount the DOI would have provided had the Tribe not assumed control over the programs covered by the contract, *see* 25 U.S.C. § 5325(a)(1).

Navajo Nation appeals the district court's adverse ruling covering the 2017 through 2020 AFAs. It contends that both

the ISDEAA and applicable regulations compel the DOI to approve Navajo Nation's funding proposals for those years. The DOI does not appeal the district court's adverse ruling with respect to Navajo Nation's 2015 and 2016 funding proposals.

**II.**

The district court had subject matter jurisdiction pursuant to 25 U.S.C. § 5331(a), which confers original jurisdiction to adjudicate a tribe's claim for damages against the DOI arising out of a self-determination contract authorized by the ISDEAA. Navajo Nation filed a timely notice of appeal of the district court's final order granting the parties' respective summary judgment motions, giving this court appellate jurisdiction under 28 U.S.C. § 1291.

"We review de novo the district court's grant of summary judgment, applying the same standards that governed the district court's decision." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*, 18 F.4th 712, 717 (D.C. Cir. 2021) (citing *Kimberlin v. Dep't of Just.*, 139 F.3d 944, 947 (D.C. Cir. 1998)). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

**III.**

We conclude that the ISDEAA does not require the DOI to approve Navajo Nation's funding requests for the years 2017 through 2020 but its regulations do. The 2017 proposal requested "the renewal of a term contract" with "no material [or] substantial change to the scope or funding" of the previous contract, *see* 25 C.F.R. § 900.33, and the 2018 through 2020 proposals are "successor[s]" to and "substantially the same as"

the 2017 proposal, *see id.* § 900.32. The DOI therefore violated 25 C.F.R. §§ 900.32 and 900.33 when it considered the section 5321(a)(2) declination criteria and partially declined the Tribe's proposed AFAs. Accordingly, we reverse the district court.

**A.**

Navajo Nation first contends that the DOI violated the ISDEAA when it declined the four funding proposals at issue in this appeal. As always, our analysis begins with the statutory text. *Van Buren v. United States*, 141 S. Ct. 1648, 1654 (2021).

The DOI claims authority to decline the proposals under 25 U.S.C. § 5321(a)(2)(D), which permits the Secretary to decline a "proposal to amend or renew a self-determination contract" if "the amount of funds proposed under the contract is in excess of the applicable funding level for the contract, as determined under [section] 5325(a)." *See also* 25 C.F.R. § 900.22(d). Section 5325(a), in turn, provides that "the amount of funds" awarded as reimbursement for direct program expenses pursuant to a self-determination contract— also known as the secretarial amount—"shall not be less than" the amount the DOI "would have otherwise provided for the operation of the programs or portions thereof for the period covered by the contract." 25 U.S.C. § 5325(a)(1); *see also Fort McDermitt Paiute & Shoshone Tribe*, 6 F.4th at 7; *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("[T]he word 'shall' usually connotes a requirement."). Therefore, when a tribe's proposed reimbursement for direct program expenses exceeds the funding that the DOI would have otherwise provided, *see* 25 U.S.C. § 5325(a)(1), section 5321(a)(2)(D) does not require the DOI to award the excess funding. *Cf. Navajo Nation I*, 852 F.3d at 1130 (section 5325(a)(1) "sets a floor, not a ceiling, on the amount of money

that a Tribe can receive in a self-determination contract" (quoting *Yurok Tribe*, 785 F.3d at 1412)).

The record shows that the DOI "would [not] have otherwise provided" the level of funding requested by Navajo Nation had the government continued to operate the covered programs itself. *See* 25 U.S.C. § 5325(a)(1). Rather, the DOI would have provided only about $1.4 million in funding for direct program expenses in each year from 2017 through 2020. Because 25 U.S.C. § 5325(a)(1) requires the DOI to award only the amount it would have otherwise provided had it continued to operate the covered programs itself, the DOI did not run afoul of the ISDEAA when it declined Navajo Nation's $17 million funding request to the extent it exceeded the secretarial amount.

Navajo Nation disagrees, arguing that the amount "deemed approved" in 2014 reset "the applicable funding level for the contract," *see* 25 U.S.C. § 5321(a)(2)(D), such that the DOI could not reduce funding in "all subsequent years," including those years covered by the renewed contract, *see* Appellant's Br. 14. But the Tribe's interpretation runs counter to the ISDEAA's statutory scheme, which provides for the determination of contract funding "[o]n an annual basis." 25 U.S.C. § 5325(a)(3)(C); *see also id.* § 5329(c) (model self-determination contract subsec. (c)(2)) (providing that the "amount of funds to be paid under" a self-determination contract "shall be determined in an annual funding agreement"); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must . . . interpret the statute as a symmetrical and coherent regulatory scheme . . . and fit . . . all parts into a harmonious whole." (cleaned up)). The 2014 AFA was "deemed approved" because the Secretary missed the statutory deadline for declining the proposal. *Navajo Nation I*, 852 F.3d at 1129–30; *see* 25 U.S.C.

§ 5321(a)(2). Although the DOI's untimely declination changed the government's funding obligation for 2014, the "applicable funding level for the contract," as defined by section 5325(a), did not change. 25 U.S.C. § 5321(a)(2)(D). Thereafter, section 5325 supplies the only constraint on the DOI's authority to decline funding for direct program expenses pursuant to section 5321(a)(2)(D): the DOI must provide, at a minimum, the amount the "Secretary would have otherwise provided for the operation of the programs" had the federal government continued to operate them itself. *Id.* § 5325(a)(1).

In short, we reject Navajo Nation's reading of the ISDEAA. The DOI did not violate 25 U.S.C. § 5321(a)(2) when it declined to award funding greater than the secretarial amount.

**B.**

In addition and relying on the regulations, Navajo Nation contends that 25 C.F.R. §§ 900.32 and 900.33, taken together, require the DOI to grant the Tribe's funding requests from 2017 through 2020. In accordance with statutory directive, tribal representatives participated directly in the promulgation of regulations administering the ISDEAA. *See* 25 U.S.C. § 5328(d)(1) (requiring relevant federal agencies to "confer with, and allow for active participation by, representatives of Indian tribes, tribal organizations, and individual tribal members" in promulgating ISDEAA regulations); Indian Self-Determination & Education Assistance Act Amendments, 61 Fed. Reg. 32,482, 32,483 (June 24, 1996) (summarizing procedures for promulgation). The two regulations relevant here prohibit the DOI from considering the declination criteria listed in 25 U.S.C. § 5321(a)(2) when evaluating certain proposals made by an Indian tribe. *See* 25 C.F.R. § 900.33 (applying prohibition to "proposals to renew term contracts");

*id.* § 900.32 (applying prohibition to "proposed successor annual funding agreement[s]").

We begin with 25 C.F.R. § 900.33, which applies to proposed renewal contracts. Navajo Nation insists that section 900.33 compels the DOI to grant the proposed 2017 AFA. Section 900.33 provides that the DOI, when acting via the BIA, "will not review the renewal of a term [self-determination] contract for declination issues where no material and substantial change to the scope or funding of a program, functions, services, or activities has been proposed by the Indian tribe." 25 C.F.R. § 900.33. In rejecting Navajo Nation's argument, the district court determined that section 900.33 applies only to proposed renewal contracts, not to proposed AFAs. But a proposed renewal contract incorporates the proposed AFA so that the AFA "become[s] part of the contract." *Menominee Indian Tribe*, 614 F.3d at 522. And interpreting section 900.33 to exclude an AFA would render the provision's reference to "funding" obsolete because a self-determination contract does not itself provide for funding. *See* 25 U.S.C. § 5329(c) (model self-determination contract subsec. 1(f)(2)(B)). The DOI's authority to decline a proposed renewal contract therefore subsumes its authority to decline a proposed AFA, at least with respect to the first AFA in a renewal contract's term, which is submitted together with the proposed renewal contract. *See* 25 C.F.R. § 900.12.

Perhaps recognizing the shortcomings of this position, the DOI instead maintains that the 2017 AFA, which requested an amount similar to the amount that was "deemed approved" in 2014, *see id.* § 900.18, proposed a "material and substantial change" to the funding for Navajo Nation's judicial operations, *see id.* § 900.33. This change, the DOI contends, arose not by virtue of the parties' annual "renegotiation," *cf.* 25 U.S.C. § 5324(c)(2), but by operation of the regulations, *see* 25 C.F.R.

§ 900.18 (providing that proposals not declined by the Secretary within ninety days are "deemed approved"), and thus should not be considered part of the previous contract for the purpose of evaluating the proposed renewal contract under 25 C.F.R. § 900.33.

The DOI, however, relies on a distinction that the regulatory scheme does not draw. An amount that is "deemed approved," *see id.* § 900.18, "shall" be awarded by the Secretary, *see id.* § 900.19, and "become[s] part of the contract," *Menominee Indian Tribe*, 614 F.3d at 522. As the district court correctly recognized, the amount "deemed approved" in 2014 extended to the "successor" 2015 and 2016 AFAs pursuant to 25 C.F.R. § 900.32. From there, Navajo Nation requested a continuation of the same funding amount when it proposed the 2017 renewal contract. Because there is no "material and substantial change" between the proposed renewal contract—including the proposed 2017 AFA—and the previous contract, the DOI violated 25 C.F.R. § 900.33 when it considered the section 5321(a)(2) declination criteria and declined to award the funds Navajo Nation requested in 2017.

Having established that Navajo Nation is entitled to the funding it requested in 2017, we turn to 25 C.F.R. § 900.32, which applies to the 2018 through 2020 "successor" AFAs. A "successor" AFA is one that follows an earlier AFA under the same self-determination contract. *See* 25 C.F.R. § 1000.2 (defining "[s]uccessor AFA" as "a funding agreement negotiated after a [tribe's] initial agreement with a bureau for continuing to perform a particular program"). Section 900.32 provides that, when reviewing a proposed successor AFA, the DOI "shall approve" and "may not decline[] any portion of" the proposal that "is substantially the same as the prior funding agreement." Because the successor 2018 through 2020 AFA proposals are substantially the same as the initial 2017 AFA—

both in the programs covered and in the scope of funding—the DOI may not consider the declination criteria when reviewing the proposals and therefore its partial declination of Navajo Nation's funding requests ran afoul of section 900.32.

Although the regulations compel a substantial (and potentially permanent) increase in funding due to the DOI's untimely 2014 declination, the regulations were promulgated against the backdrop understanding that "each provision of [the ISDEAA] and each provision of a contract or funding agreement shall be liberally construed for the benefit of the Indian Tribe." 25 U.S.C. § 5321(g); *accord* 25 C.F.R. § 900.3(a)(5). So long as the DOI has tied its own hands with regulations like sections 900.32 and 900.33, only the Congress, not the DOI, wields the authority to reduce a self-determination contract's funding level without the tribe's agreement. *See* 25 U.S.C. § 5368(g)(3)(B)(ii) (prohibiting the Secretary from reducing "the amount of funds required under this subchapter" "except as necessary as a result of," *inter alia*, "a congressional directive in legislation or an accompanying report"); S. REP. NO. 100-247, at 17 (describing the Congress's intent "to prevent tribal contract funding amounts from being unilaterally reduced by the Secretary"); *Ramah Navajo Sch. Bd. v. Babbitt*, 87 F.3d 1338, 1344 (D.C. Cir. 1996) (the ISDEAA "circumscribe[s] as tightly as possible the discretion of the Secretary"). The DOI's failure to decline in a timely manner the Tribe's proposal in 2014 proved to be costly.

## IV.

For the foregoing reasons, we reverse the district court's order granting summary judgment to the Department of the Interior and remand to the district court for proceedings consistent with this opinion.

*So ordered.*