# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 1, 2020　　　　　Decided April 13, 2021

No. 19-5299

SWINOMISH INDIAN TRIBAL COMMUNITY,
APPELLANT

v.

XAVIER BECERRA, IN HIS OFFICIAL CAPACITY AS SECRETARY,
U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-01156)

*Paul E. Frye* argued the cause for appellant. With him on the briefs were *Rachel A. Sage*, *Stephen T. LeCuyer*, *Steven D. Gordon*, and *Philip Baker-Shenk*.

*Lloyd B. Miller*, *Donald J. Simon*, *Rebecca A. Patterson*, and *Whitney A. Leonard* were on the brief for *amici curiae* 19 Native American Tribes and Tribal Organizations and the National Congress of American Indians in support of appellant.

*John S. Koppel*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief was *Daniel Tenny*, Attorney.

Before: KATSAS, RAO and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*:  Indian Health Service agreed to pay the Swinomish Indian Tribal Community to run a health program on the Swinomish Reservation. In this case, Swinomish says Indian Health Service shortchanged it.

The district court disagreed.  So do we.

I.

A.

For much of the history of American Indian reservations, the Bureau of Indian Affairs ran most aspects of tribal government.  The federal government controlled tribes' health care, education, and policing.  The result was that decisions crucial to the lives of American Indians were made by politicians and bureaucrats far removed from tribal communities.  This was not, to put it mildly, ideal.  *See* H.R. Rep. No. 93-1600, at 19 (1974) ("The growth of the administrative power of the Bureau of Indian Affairs . . . on Indian reservations had effectively destroyed existing tribal forms of government.").

So Congress passed the Indian Self-Determination and Education Assistance Act, Pub. L. No. 93-638, 88 Stat. 2203 (1975) (codified as amended at 25 U.S.C. § 5301 *et seq.*), to provide federal funds directly to tribes that "assume responsibility for aid programs that benefit their members." *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 753 (2016).  With regard to health care, tribes in effect

become federal contractors running health programs previously administered by Indian Health Service. They then negotiate contracts with Indian Health Service.

There are, however, limits to the negotiation. No matter what, the government must pay the tribe at least what Indian Health Service would otherwise have spent to run the same program. 25 U.S.C. § 5325(a)(1). This payment is called the secretarial amount. *See, e.g.*, *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 186 (2012).

Since federal contracts come with expensive compliance costs, Congress amended the Act in 1988 to cover those costs. Pub. L. No. 100-472, § 205, 102 Stat. 2285, 2292-94 (1988) (codified at 25 U.S.C. § 5325). Indian Health Service must now also pay "contract support costs" not included in the secretarial amount:

> There shall be added to the amount required by paragraph (1) contract support costs which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management, but which —
>
> > (A) normally are not carried on by the respective Secretary in his direct operation of the program; or
> >
> > (B) are provided by the Secretary in support of the contracted program from resources other than those under contract.

*Id.* § 5325(a)(2).

Contract support costs cover indirect administrative expenses like audits and computer systems, as well as direct expenses like workers' compensation and unemployment taxes. Often, the indirect expenses billed to Indian Health Service are a percentage of the total direct costs.

Indian Health Service pays the secretarial amount and contract support costs so that tribes will not have to use their own money to run and support the program. As a result, tribes typically don't bill patients for their medical services. But that doesn't mean tribes can't earn money elsewhere. Like private hospitals and doctors' offices, they can bill patients' insurance companies, including Medicare and Medicaid. 25 U.S.C. § 1641(d)(1).[1]

The Indian Self-Determination and Education Assistance Act is not silent as to this insurance money. It requires tribes to use the insurance money on their health programs. But the Act also requires Indian Health Service to fully fund the tribe's program without regard to any insurance money it receives. *Id.* §§ 5325(m), 5388(j).

In other words, if Indian Health Service would have spent $3 million on a tribe's health care back when it provided the health care directly, it must now pay that contracting tribe at least $3 million — period. This is true even if the tribe earns $1 million in insurance revenue. Indian Health Service can't pay the tribe $2 million on the theory that its revenue will make

---

[1] Tribes can earn income from a variety of sources. In this case, Swinomish says it earned $636,421 from "third-party billings" and received $27,730 as "additional revenue." Appellant's Br. at 17. Because insurance money makes up the vast majority of Swinomish's income, we refer to all third-party revenue as "insurance money."

up the difference.  Instead, the tribe gets to use its $1 million earnings however it wants — as long as it is spent on the program.

But recall that Indian Health Service must also pay contract support costs.  Taking the above example, all parties would agree that Indian Health Service owes contract support costs on the $3 million secretarial amount.  But what about the additional $1 million the hypothetical tribe receives from insurers and spends on health services?  The question in this case is whether Indian Health Service must pay contract support costs on that additional money.

## B.

For the past twenty-four years, the Swinomish Indian Tribal Community has directly delivered health care to its members using funds negotiated through a contract with Indian Health Service.  As required by statute, *supra* pp. 2-5, these negotiated funds include the secretarial amount and contract support costs.  Swinomish uses the funds to run a medical clinic and provide dental services, substance abuse counseling, and other health services.

Those are not the only funds Swinomish spends on its medical services.  It bills its patients' health insurance providers and spends this revenue on its health services.  And the Tribe can tap into its general treasury.[2]

---

[2] *Cf.* Appellant's Br. at 17 ("Thus, even if [Indian Health Service] had paid the Tribe's 2010 [contract support costs] claim in its entirety (*i.e.*, for $245,867), the Tribe would still be short $242,885 in operating the Federal program.") (emphasis omitted).

In 2010, Indian Health Service paid Swinomish a total of $3,028,213 to run the health program. But Swinomish claims it is owed an additional $245,867 in direct and indirect contract support costs calculated as percentages of the money it received from insurers and spent on health services. *See* Appellant's Br. at 15-16. It therefore sued under the Contract Disputes Act and Declaratory Judgment Act. 41 U.S.C. § 7101 *et seq*.; 28 U.S.C. § 2201; *see also* 25 U.S.C. § 5331(a).

The district court granted the government's motion for summary judgment. *Swinomish Indian Tribal Community v. Azar*, 406 F. Supp. 3d 18, 32 (D.D.C. 2019).

The Tribe appealed.

## II.

The Indian Self-Determination and Education Assistance Act does not require Indian Health Service to pay for contract support costs on insurance money received by Swinomish. Neither does Swinomish's contract with Indian Health Service.[3]

## A.

The Indian Self-Determination and Education Assistance Act requires the government to pay for *some* contract support costs. But for two reasons, the Act's text and structure do not require payment of contract support costs when a tribe spends money received from sources other than Indian Health Service, like insurance providers.

---

[3] We have jurisdiction under 28 U.S.C. § 1291. And we review the district court's decision de novo. *Stoe v. Barr*, 960 F.3d 627, 629 (D.C. Cir. 2020).

First, when the Act speaks of contract support costs, it does not mention money received from third parties, like insurance providers. Instead, the Act says reimbursements for contract support costs cover activities that "ensure compliance with the terms of *the* contract" conducted by the tribe "as a contractor." 25 U.S.C. § 5325(a)(2) (emphasis added).

The scope of contract support costs is thus limited to those under *one* "contract" — the one between a "contractor" (the tribe) and the contracting agency (Indian Health Service). In *that* contract, a tribe promises to provide certain services to its community. In exchange, the government promises to provide the tribe with a certain amount of money — the secretarial amount — for those services. Then, on top of that, the Act requires additional government funding to cover a tribe's cost of complying with the terms of *that* contract.

To be sure, other contracts affect the tribe's budget. A patient might have a contract with a private insurer. Another patient may have Medicare or Medicaid. In those instances, billing patients' insurers may lead to more money for the tribe. But the Act doesn't require the government to pay for contract support costs on money generated from those other contracts — just for money paid by Indian Health Service for "*the* contract."

The Act repeatedly reinforces this limited scope for the contract support costs it requires. For example, it guarantees reimbursement for contract support costs incurred while operating "the Federal program that is the subject of *the* contract" or "the Federal program, function, service, or activity pursuant to *the* contract." *Id*. § 5325(a)(3)(A)(i)-(ii) (emphases added).

Second, just as the Act speaks of contract support costs without any mention of insurance money, it elsewhere speaks of insurance money without any mention of contract support costs. It refers to insurance money at 25 U.S.C. § 5388(j) and § 5325(m) — all without a mention of contract support costs.

To the contrary, by requiring Indian Health Service to pay a secretarial amount sufficient to support the contracted-for services, the Act repeatedly contemplates that the contracting parties (a tribe and Indian Health Service) will not factor that insurance money into the contract. Insurance money:

- "shall be treated as supplemental funding to that negotiated in the funding agreement," *id.* § 5388(j);

- "shall not result in any offset or reduction in the amount of funds," *id.*; and

- "shall not be a basis for reducing the amount of funds otherwise obligated to the contract," *id.* § 5325(m)(2).

## B.

Swinomish's counter-arguments are unavailing.

Swinomish points out that the Act requires the government to fund any contract support cost related to "the Federal program." *Id.* § 5325(a)(3)(A)(i)-(ii). But in the context of the Act, "the Federal program" does not encompass spending insurance payments. As covered above, those sections refer to "the Federal program that is the subject of *the* contract" and "the Federal program, function, service, or activity pursuant to *the* contract." *Id.* (emphases added).

Swinomish is correct to say that it spends insurance money on health services. But it also can spend money from the Tribe's general treasury on health services. And if a tribe receives private or public grant funding, it can spend that money on health services as well. If you take Swinomish's theory of the scope of "the Federal program" to its logical conclusion, Indian Health Service would be on the line for unlimited contract support costs based on the unlimited sources of outside-the-contract funding available to a tribe. That's not what the Act requires. *See supra* pp. 6-8.

Swinomish is also right when it says it agreed to maintain a Third Party Billing program under its contract with Indian Health Service. But Swinomish does not point to any outstanding costs that Indian Health Service still owes for maintaining that program. And the Funding Agreement — the contract on which contract support costs are owed in this case — doesn't say that Indian Health Service will pay costs for the income the Third Party Billing program brings in. In other words, Swinomish gets contract support costs with regard to the billing program's expenses, but not with regard to its income.

That of course means that Swinomish's backup argument — that it contracted for the contract support costs in question — fails. Perhaps the contract *could* have provided that Indian Health Service would pay for any compliance costs associated with any money spent from insurance revenue. But it didn't. Instead, Section 6 of the contract says contract support costs "will be calculated and paid in accordance with" the Act, with any other statutory restrictions, and with Indian Health Service's standard policy. J.A. 51-52. That policy does not cover compliance costs related to insurance money. *See* Indian Health Manual – Part 6, Chapter 3.

Next, Swinomish's interpretation of 25 U.S.C. § 5388(c) is also unpersuasive. Tribes can run health programs under either Subchapter I or V of the Act. Section 5388(c) explains the funding available to tribes under a Subchapter V contract, like the Funding Agreement in this case:

> The Secretary shall provide funds under a funding agreement under this subchapter in an amount equal to the amount that the Indian tribe would have been entitled to receive under self-determination contracts under this chapter, including amounts for direct program costs specified under [Subchapter I] and amounts for contract support costs specified under [Subchapter I], including any funds that are specifically or functionally related to the provision by the Secretary of services and benefits to the Indian tribe or its members, all without regard to the organizational level within the Department where such functions are carried out.

25 U.S.C. § 5388(c).

Swinomish says this provision expands the funds Indian Health Service must pay a tribe under Subchapter V — the subchapter under which Swinomish runs its health program. The Tribe argues the phrase "including any funds . . . related to the provision by the Secretary of services and benefits" encompasses money received from patients' insurers.

We disagree. The word "including" is first used to clarify the types of funding already available under Subchapter I, not expand them. This is consistent with the ordinary use of the

term. And nothing else in Section 5388(c) suggests "including" should be given a different meaning when it is used again in the same sentence. Absent any clear language that Subchapter V tribes are entitled to *more* funds, like support costs on expended income, Swinomish's interpretation of Section 5388(c) is not convincing.

Finally, Swinomish fears that an adverse decision today will mean a tribe is penalized (with less funding) when it chooses to directly bill third parties. *See* 25 U.S.C. § 1641(d)(1). To illustrate this fear, assume Indian Health Service is in charge of the billing. It collects $200,000 in insurance revenue. Indian Health Service must — and does — spend all of this money on the program.

Now assume that a tribe contracts to collect third-party insurance itself. It, too, earns $200,000 in revenue. And it, too, must spend this money to improve the program. But remember, the tribe is on the hook for additional compliance costs the federal government doesn't have to pay. Let's say those costs are 25% of whatever is spent on the program. So we take the $200,000 in insurance money and subtract $50,000 to cover those extra-contractual compliance costs. In this scenario, $150,000 is used on the program — $50,000 less than when Indian Health Service, which didn't have to account for the compliance costs, was running the billing program.

Although Swinomish endorsed the assumptions behind that hypothetical at oral argument, it is not at all clear that this hypothetical reflects the reality. And more to the point, even under the hypothetical, the government still fully funded "*the* contract." *Id.* § 5325(a)(2) (emphasis added). Because Indian Health Service paid contract support costs attached to the contract expenses, the Tribe didn't have to spend its own funds to comply with the Funding Agreement.

That is all the statute requires.

\*     \*     \*

The Act does not require Indian Health Service to pay for contract support costs on insurance money spent on the health program. Nor did Indian Health Service contractually agree to pay for those costs. We affirm the judgment of the district court.