**FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

NOV 21 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

SAN CARLOS APACHE TRIBE,

Plaintiff-Appellant,

v.

XAVIER BECERRA, Secretary, U.S. Department of Health and Human Services; BENJAMIN SMITH,* Principal Deputy Director, Indian Health Service; UNITED STATES OF AMERICA,

Defendants-Appellees.

No.   21-15641

D.C. No. 2:19-cv-05624-NVW

OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted March 7, 2022
Phoenix, Arizona

Before: Michael Daly Hawkins, Richard A. Paez, and Paul J. Watford, Circuit Judges.

Opinion by Judge Paez

---

* Substituted according to Federal Rule of Civil Procedure 25(d).

# SUMMARY[**]

## Tribal Issues

The panel reversed the district court's dismissal of the San Carlos Apache Tribe's ("the Tribe") claim alleging that federal defendants must cover the "contract support costs" ("CSC") for the third-party-revenue-funded portions of the Tribe's healthcare program.

The Indian Self-Determination and Education Assistance Act ("ISDA") allowed tribes to run their own healthcare programs, funded by Indian Health Services ("IHS") in the amount IHS would have spent on a tribe's health care. Because it was too expensive for the tribes to run the programs, Congress enacted a fix by requiring IHS to provide tribes with CSC—the amount of money a tribe would need to administer its healthcare programs. In addition, Congress allowed the tribes to bill outside insurers directly, and allowed tribes to keep the third-party revenue without diminishing their IHS grants, so long as tribes spent that revenue on health care.

At issue is who pays the CSC for the additional money the Tribe recovers from outside insurers. The Tribe contends that the IHS must cover those additional CSC. The Tribe filed suit to recover the CSC for program years 2011-2013. The parties settled all claims but Claim 2, which alleges that defendants must cover CSC for the third-party-revenue-funded portions of the Tribe's healthcare program. The panel held that the text of the governing statute, 25 U.S.C. § 5325(a), compelled reversal and remand for additional proceedings.

The federal defendants contended that the language of the contract under which the Tribe operated its healthcare programs foreclosed the Tribe's claim because the Tribe received the amount of CSC specified by the contract, a properly calculated amount that 25 U.S.C. § 5325(a) did not override. The panel held that this argument ignored the flexibility written into the contract, which allowed those amounts to be adjusted in the event of certain changes. A determination that the Tribe is owed CSC by statute for third-party-revenue-funded portions of its health-care program would

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

fall under this umbrella. Additionally, because the contract incorporated the provisions of the ISDA, if that statute requires payment of the disputed funds, it controlled. The panel concluded that the contract was not dispositive and proceeded to determine whether the Tribe was owed those additional CSC by statute.

The panel started with the CSC provisions of the relevant statute, 25 U.S.C. § 5325(a), and held that Sections (a)(2) and (a)(3)(A)(ii), together, pointed toward requiring the defendants to cover CSC for activities funded by third-party revenues. The panel noted that this conclusion departed from the only other circuit to have considered the issue in *Swinomish Indian Tribal Cmty. v. Becerra*, 993 F.3d 917, 920 (D.C. Cir. 2021). The panel held that it could not conclude that § 5325(a) *unambiguously* excluded those third-party-revenue-funded portions of the Tribe's healthcare program from CSC reimbursement. The plain language of this section appears to include those costs. None of the additional statutory language to which defendants pointed erased this ambiguity.

The Tribe merely needed to demonstrate that the statutory language was ambiguous, and the Tribe met this burden. Because the statutory language was ambiguous, the Indian canon applied, and the language must be construed in favor of the Tribe. The panel held that the ISDA required payment of CSC for third-party-funded portions of the Federal healthcare program operated by the Tribe. The panel found that the Tribe met its burden under Fed. R. Civ. P. 12(b)(6), reversed the dismissal of the claim, and remanded for further proceedings.

## COUNSEL

Lloyd B. Miller (argued), Rebecca A. Patterson, and Whitney A. Leonard, Sonosky Chambers Sachse Miller & Monkman LLP, Anchorage, Alaska; Alexander B. Ritchie, San Carlos Apache Tribe, San Carlos, Arizona; for Plaintiff-Appellant.

John S. Koppel (argued) and Daniel Tenny, Appellate Staff Attorneys; Glenn McCormick, Acting United States Attorney; Brian M. Boynton, Acting Assistant Attorney General; for Defendants-Appellees.

Caroline P. Mayhew, Hobbs Straus Dean & Walker LLP, Washington, D.C.; Geoffrey D. Strommer and Stephen D. Osborne, Hobbes Straus Dean & Walker LLP, Portland, Oregon; for Amici Curiae Native American Tribes, Tribal Organizations, Indian Health Boards, and the National Congress of American Indians.

PAEZ, Circuit Judge:

This case presents a question of Native sovereignty in the context of a healthcare dispute.

Indian Health Service ("IHS") administers health care programs for Native tribes. Those programs bill insurance like any other doctor's office: if a patient is covered by Medicare, Medicaid, or private insurance, IHS bills that insurance for the cost of the procedure and retains that third-party revenue.

In an attempt to further tribal sovereignty, Congress in the Indian Self-Determination and Education Assistance Act ("ISDA") allowed tribes to run their own healthcare programs, funded by IHS in the amount IHS would have spent on a tribe's health care.[1] 25 U.S.C. § 5325(a)(1). This furthered the goal of "assuring maximum Indian participation in the direction of . . . Federal services to Indian communities so as to render such services more responsive to the needs and desires of those communities." 25 U.S.C. § 5302(a). But tribes quickly ran into a roadblock: absent the bureaucracy and legal protections the Federal government enjoys, it was too expensive for tribes to run those programs. Congress enacted a fix by requiring IHS to provide tribes with "contract support costs" ("CSC"), or the

---

[1] *Navajo Health Found.-Sage Mem'l Hosp., Inc. v. Burwell*, 263 F. Supp. 3d 1083, 1119–46 (D.N.M. 2016), eloquently explains the legislative history of the ISDA. While this history accords with our holding here, we need not rely upon it to reach our conclusion.

amount of money a tribe would need to administer its healthcare programs, so that the tribe could provide "at least the same amount of services" as IHS otherwise would. 25 U.S.C. § 5325(a)(2)–(3); S. Rep. No. 100-274, at 16 (1987).

This helped. But amici tribes explain that they still did not enjoy parity with IHS, because IHS billed outside insurers slowly, and only imperfectly remitted that money to tribes. Tribes were thus losing some of their third-party revenue. So Congress stepped in again and allowed tribes to bill outside insurers directly. 25 U.S.C. § 1641(d)(1). Congress additionally allowed the tribes to *keep* the third-party revenue without diminishing their IHS grants, so long as tribes spent that revenue on health care. 25 U.S.C. §§ 1641(d)(2)(A), 5325(m).

A simplified example clarifies this scheme. Assume that a tribe administers a $3 million healthcare program for its members. It costs the tribe $500,000 in administrative costs to do so. IHS therefore will pay the tribe $3.5 million. Additionally, the tribe recovers $1 million for those procedures from outside insurers. It is statutorily required to spend that $1 million on health care as well.

But there is a hole in this statutory scheme. Who pays the CSC for that additional $1 million in health care that the tribe must provide with its third-party revenue? At the heart of this lawsuit is Plaintiff-Appellant San Carlos Apache Tribe's ("the Tribe") contention that IHS must cover those additional CSC.

The Tribe, a federally recognized Indian Tribe in Arizona, exercises its

3

sovereignty by running its own healthcare programs and billing outside insurers directly. As required by contract and statute, it spends third-party revenue on additional health care for its members. But doing so is expensive, and the Tribe does not receive CSC from IHS to cover additional services. It filed suit to recover the CSC for program years 2011–2013. Defendant-Appellees Xavier Becerra, Secretary of the U.S. Department of Health & Human Services; Benjamin Smith, Principal Deputy Director of IHS; and the United States of America (collectively, "Defendants") contend that the Tribe must cover the additional CSC.

The parties settled all claims but Claim 2, which alleges that Defendants must cover CSC for the third-party-revenue-funded portions of the Tribe's healthcare program. The district court granted Defendants' motion to dismiss this claim. The Tribe timely appealed that dismissal.[2] We hold that the text of the governing statute, 25 U.S.C. § 5325(a), compels reversal and remand for additional proceedings.

I.

Defendants contend that the language of the contract under which the Tribe operated its healthcare programs ("the Contract") forecloses the Tribe's claim.

---

[2] We have jurisdiction under 28 U.S.C. § 1291. When reviewing the dismissal of a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), we take all factual allegations set forth in the complaint as true, construed in the light most favorable the plaintiff, and we review de novo. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) (internal citations omitted).

The section of the Contract concerning CSC reads:

CONTRACT SUPPORT COSTS

> The parties agree that the CSC funding under this Funding Agreement (FA) will be calculated and paid in accordance with Section 106(a) of the [ISDA]; IHS CSC Policy (Indian Health Manual – Part 6, Chapter 3) or its successor; and any statutory restrictions imposed by Congress. In accordance with these authorities and available appropriations for CSC, the parties agree that under this FA the San Carlos Apache Tribe will receive direct CSC in the amount of **$135,203,** and indirect CSC in the amount of **$423,731**. These amounts were determined using the FY 2010 IHS CSC appropriation, and the San Carlos Apache direct cost base and indirect rate as of **December 7, 2010**, and may be adjusted as set forth in the IHS CSC Policy (IHM 6-3) as a result of changes in program bases, Tribal CSC need, and available CSC appropriations. Any adjustments to these amounts will be reflected in future modifications to this FA.

Here, the Contract sets out an agreed-upon CSC amount and provides for adjusting this amount, as set forth in the Indian Health Manual ("IHM").[3]

Defendants contend that the Tribe's claims are meritless because the Tribe received the amount of CSC specified by the Contract, a properly calculated amount that 25 U.S.C. § 5325(a) does not override. This argument ignores the flexibility written into the Contract, which allows those amounts to be adjusted in the event of changes to "program bases, Tribal CSC need, [or] available CSC appropriations." A determination that the Tribe is owed CSC by statute for third-

---

[3] The IHM calculates CSC by applying a negotiated rate to a direct cost base. The parties dispute the amount of the direct cost base, not the negotiated rate. It can be accessed at https://www.ihs.gov/ihm/pc/part-6/p6c3/#6-3.2E.

party-revenue-funded portions of its health-care program would fall under this umbrella. Additionally, because the Contract incorporates the provisions of the ISDA, if that statute requires payment of the disputed funds, it controls. Thus, as the district court apparently concluded, we also conclude that the Contract is not dispositive and proceed to determine whether the Tribe is owed those additional CSC by statute.

## II.

The principles of statutory interpretation are familiar. "The starting point for our interpretation of a statute is always its language." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). "If the statutory language is plain, we must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 486 (2015) (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010)). But when deciding whether language is plain, "we must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *King*, 576 U.S. at 486 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

Statutory interpretation in this case has an additional wrinkle: the "Indian canon." Because "the canons of construction applicable in Indian law are rooted in the unique trust relationship between the United States and the Indians, . . . statutes

6

are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985) (internal citations and alterations omitted). And while the canon in some cases is a "guide[] that need not be conclusive," *Chickasaw Nation v. United States*, 534 U.S. 84, 85 (2001), it is here incorporated into the Contract with binding language that reads: "[e]ach provision of the [ISDA] and each provision of this Contract shall be liberally construed for the benefit of the contractor . . . ." Thus, we need not conclude that the statutory meaning is plain; rather, to find that the Tribe has plausibly alleged a claim for relief, we merely must conclude that the language is ambiguous to read it as the Tribe does.

A.

We start with the CSC provisions of the relevant statute, 25 U.S.C. § 5325(a), upon which the district court's order and the parties' arguments rely. Section 5325(a) reads:

**(a) Amount of funds provided . . .**

**(2)** There shall be added to the amount required by paragraph (1) contract support costs which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management, but which—

**(A)** normally are not carried on by the respective Secretary in his direct operation of the program; or

7

**(B)** are provided by the Secretary in support of the contracted program from resources other than those under contract.

**(3)(A)** The contract support costs that are eligible costs for the purposes of receiving funding under this chapter shall include the costs of reimbursing each tribal contractor for reasonable and allowable costs of—

**(i)** direct program expenses for the operation of the Federal program that is the subject of the contract; and

**(ii)** any additional administrative or other expense incurred by the governing body of the Indian Tribe or Tribal organization and any overhead expense incurred by the tribal contractor in connection with the operation of the Federal program, function, service, or activity pursuant to the contract,

except that such funding shall not duplicate any funding provided under subsection (a)(1) of this section.

25 U.S.C. § 5325(a).

Section (a)(2) requires that CSC be paid "for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract." This language appears straightforward: any activities that the Contract requires the Tribe to perform to comply with the Contract are eligible for CSC.

Does the Contract require the Tribe to carry on those portions of its healthcare program funded by third-party revenues? It does. The Contract

8

incorporates the ISDA.[4]  And the ISDA requires the Tribe to spend those monies on health care.  25 U.S.C. § 1641(d)(2)(A).  The third-party-revenue-funded portions of the healthcare program are therefore "activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract."  Put differently: if the Tribe did *not* spend third-party revenue on its healthcare program, as defined in 25 U.S.C. § 1641(d)(2)(A), it would fall out of compliance with the Contract.  Section (a)(2) therefore appears to apply to the scenario at hand.

Section (a)(3)(A) narrows this reading by explicitly defining CSC.  It identifies "direct" CSC, § (a)(3)(A)(i), as those expenses "for the operation of the Federal program that is the subject of the contract"; and "indirect" CSC, § (a)(3)(A)(ii), as those expenses "incurred by the tribal contractor in connection with the operation of the Federal program."  The Tribe argues that the third-party-revenue-funded healthcare activities are part of the "Federal program."  But we need not go that far; rather, to qualify for CSC, those healthcare activities need only be performed "in connection with" the operation of the Federal program.  A connection is a "causal or logical relation or sequence."  *Connection*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/connection.

---

[4] The Contract states that "The provisions of title 1 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450 et seq.) are incorporated into this agreement."

9

And here, there is a "causal" relationship between the Contract defining the Federal program and the third-party-revenue-funded activities: the Contract requires the Tribe to provide third-party-funded health care; it therefore causes the Tribe to carry out those activities. Sections (a)(2) and (a)(3)(A)(ii), together, point toward requiring Defendants to cover CSC for activities funded by third-party revenues.

This conclusion departs from the only other circuit court to have considered this issue. In *Swinomish Indian Tribal Cmty. v. Becerra*, the D.C. Circuit concluded that § 5325(a) does not comport with the reading that the Tribe advocates because "reimbursements for contract support costs cover activities that 'ensure compliance with the terms of *the* contract' conducted by the tribe 'as a contractor.'" 993 F.3d 917, 920 (D.C. Cir. 2021) (citing 25 U.S.C. § 5325(a)(2)) (emphasis in original). And because the contract is between a tribe and IHS only, CSC are limited to "a tribe's cost of complying with the terms of *that* contract." *Swinomish*, 993 F.3d at 920 (emphasis in original).

This ignores the plain language of the statute. As explained above, the contract and the statute both require tribes to spend their third-party revenue on healthcare services. Thus, the "cost of complying" with a contract between IHS and a tribe *includes* the cost of conducting those additional activities, because but for conducting those activities, the Tribe would not be in compliance with the

10

Contract. Put differently, § (a)(2) does not limit CSC to activities "described in the contract" or "funded by the signatories to the contract," each of which would favor *Swinomish*'s reading. Rather, it authorizes payment of CSC for *all* activities—regardless of funding source—that are required for compliance with the Contract. This includes the third-party-revenue-funded portions of the program.

*Swinomish* additionally rejected the reading of § (a)(3)(A) that the Tribe here advocates. It found that "the Federal program" did not cover the third-party-funded activities, and therefore that § (a)(3)(A) does not authorize CSC. 993 F.3d at 921. That, too, misreads the statute.

First, it is entirely possible to read "the Federal program" as encompassing those portions of the Tribe's healthcare program funded by third-party revenue. This is the program that the Tribe operates under Federal directive, via Federal contract, in the Federal government's stead; it is therefore possible that all activities required by the Contract, regardless of funding source, comprise one "Federal program." At oral argument, Defendants' attorney explained that when tribes bill insurance companies, they "plow that money back into *the program*" and "pay for general costs that are associated with *the program*." Counsel also explained that third-party revenue "is an additional benefit that allows [the Tribe] to expand services under *the program* and basically to expand *the program*." Finally, counsel for Defendants explained that both IHS and the Tribe, when

11

administering health care, have "obligations to continue to use those funds for purposes of the contract, so there's no disparity there: *the program* works the same way for the government and the Tribe with respect to third-party income." At least informally, then, IHS itself refers to the expanded suite of services funded by third-party revenue as being part of "the program." It is difficult, therefore, to credit Defendants' argument—and *Swinomish*'s conclusion—that the meaning of the statutory phrase "the Federal program" is not *at least* ambiguous.

But even if "the Federal program" does not refer to those third-party-revenue-funded healthcare activities, *Swinomish* still misreads § (a)(3)(A). That statutory language does not limit CSC to "the Federal program"; it limits CSC to costs "incurred by the tribal contractor in connection with the operation of the Federal program." That language contemplates that there are at least some costs *outside* of the Federal program itself that require CSC. Even if the third-party-funded activities are *not* part of the "Federal program," their administrative costs were "incurred . . . in connection with the operation of the Federal program" and are therefore recoverable by the Tribe from IHS.

In short, we cannot conclude that § 5325(a) *unambiguously* excludes those third-party-revenue-funded portions of the Tribe's healthcare program from CSC reimbursement. Indeed, the plain language of this section appears to include those costs. This would lead us to conclude that the district court erred. Before reaching

12

that conclusion, however, we turn to the additional sections of the statute upon which the parties rely.

B.

None of the additional statutory language to which Defendants point erases this ambiguity. First, Defendants refer to 25 U.S.C. § 5325(m), which provides that:

> The program income earned by a tribal organization in the course of carrying out a self-determination contract—
>
> **(1)** shall be used by the tribal organization to further the general purposes of the contract; and
>
> **(2)** shall not be a basis for reducing the amount of funds otherwise obligated to the contract.

The district court reasoned that because § 5325(m) concerns "program income earned," while § 5325(a) concerns funds "provided" by the Secretary, the two refer to separate funds. *Swinomish* similarly reasoned that because this section refers to insurance monies without CSC, Congress could not have intended to provide CSC for third-party-revenue-funded portions of the healthcare program. 993 F.3d at 921.

This reading is erroneous as well. This section says nothing about the administrative costs of the third-party-revenue-funded programs; it therefore cannot clearly be read as taking a position on how those costs should be funded. Congress's intentions are not clear; Congress may have intended the reading

13

*Swinomish* favored, but it may also have assumed that § 5325(a) covered CSC and refrained from mentioning them again so as not to be redundant. We conclude, therefore, that this passage is ambiguous as to CSC.

Second, Defendants point to 25 U.S.C. § 5326, which reads:

> Before, on, and after October 21, 1998, and notwithstanding any other provision of law, funds available to the Indian Health Service in this Act or any other Act for Indian self-determination or self-governance contract or grant support costs may be expended only for costs directly attributable to contracts, grants and compacts pursuant to the Indian Self-Determination Act and no funds appropriated by this or any other Act shall be available for any contract support costs or indirect costs associated with any contract, grant, cooperative agreement, self-governance compact, or funding agreement entered into between an Indian tribe or tribal organization and any entity other than the Indian Health Service.

This section of the ISDA prevents IHS from paying CSC for contracts between a tribe and an entity other than IHS. It is not clear that this section is relevant. Congress enacted § 5326 in response to a Tenth Circuit case that required the BIA to pay administrative costs for a New Mexico *state* program. *See Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455 (10th Cir. 1997); H.R. Rep. No. 105-609, at 110 (1998). It thus seems directed at preventing IHS from being on the hook for programs unrelated to its healthcare contract with the Tribe. Perhaps for this reason, *Swinomish* did not consider § 5326. Nonetheless, because Defendants contend that it is dispositive, we consider it.

14

Are CSC for the third-party-revenue-funded extensions of the Tribe's healthcare program "directly attributable" to the Contract? Or are they "associated with [a] contract" between the Tribe and another "entity"? The Tribe argues that the CSC associated with third-parties revenue are "directly attributable" to the Contract because but for that Contract, the Tribe would not be required to bill Medicare and Medicaid—nor would it have the right to. Defendants urge us to agree with the district court, which reasoned that, although the third-party revenue at issue here was "undoubtedly 'attributable' to [the Tribe's] contract with IHS," it was not "*directly* attributable" to that contract. The district court reasoned that this language precluded the Tribe from collecting additional CSC.

We are sensitive to the district court's careful analysis, but we disagree. We cannot conclude that the statute *unambiguously* follows Defendants' interpretation. Consider how insurance billing works in practice: a healthcare provider performs a procedure. The office then bills the patient's insurance. The Contract requires the Tribe to do so. If insurance turns out to cover the procedure, the Tribe can keep the money. Otherwise, it's on the hook. Either way, the procedure has already been performed as required by the Contract. If the Tribe keeps the money, it may spend it on further program services. This spending occurs only because the Contract allows the Tribe to recover the insurance money and requires the Tribe to

15

spend it.  It is therefore not clear that this section unambiguously means that this spending is *not* "directly attributable" to the Contract.

III.

The Tribe administers its own healthcare program and bills outside insurers, despite the cost, because IHS has allegedly demonstrated that it cannot do so effectively.  The Tribe now seeks to be put on equal footing with IHS.  The Tribe merely needs to demonstrate that the statutory language is ambiguous.  It has met that burden.  Because the statutory language is ambiguous, the Indian canon applies, and the language must be construed in favor of the Tribe.  We hold that the ISDA requires payment of CSC for third-party-funded portions of the Federal healthcare program operated by the Tribe.  We therefore find that the Tribe has met its burden under Rule 12(b)(6), reverse the dismissal of this claim, and remand for further proceedings.

REVERSED AND REMANDED.

16